United States District Court
Southern District of Texas

**ENTERED**

March 30, 2026

Nathan Ochsner, Clerk

**-UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GABRELLIA BEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-04394 |
| | § | |
| TEXAS DEPARTMENT OF FAMILY | § | |
| AND PROTECTIVE SERVICES, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Gabrellia Bee ("Bee") worked as a legal assistant for the Texas Department of Family and Protective Services ("DFPS"). Bee alleges that she started having problems at work when Stefanie Adams ("Adams") became her supervisor, so she filed an internal complaint. Soon after, Adams gave Bee a poor performance evaluation. Bee first filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and later brought suit against DFPS for employment discrimination. Bee further alleges that DFPS paid her less than similarly situated male and Caucasian employees, subjected her to a hostile work environment, and retaliated against her for filing internal complaints.

Pending before the Court is DFPS's Motion for Summary Judgment. (Dkt. No. 28). For the following reasons, the Court **GRANTS** the Motion and **DISMISSES** Bee's claims against DFPS.

## I.    BACKGROUND[1]

Bee began her employment as a Legal Assistant II in the Regional Litigation Department of DFPS in January 2007.  (Dkt. No. 22 at 2).  In January 2021, Adams started supervising Bee.  (Dkt. No. 28-7 at 1–2).  In April 2021, Bee filed an internal complaint alleging discrimination and disparate treatment by Adams.  (Dkt. No. 22 at 2).  Shortly thereafter, Adams issued Bee a performance evaluation that included a "Does Not Meet Expectations" rating in the category of "Interaction with Co-workers, Shareholders, Court Staff and Opposing Counsel."  (Dkt. No. 28-2 at 23–26); (*see also* Dkt. No. 22 at 2). Adams cited Bee's failure to communicate policies during a county-workload transfer, communication issues with an attorney, and limited availability to assist colleagues. (Dkt. No. 28-2 at 25).

In January 2022, Bee filed a charge of discrimination with EEOC alleging race discrimination, age discrimination, and retaliation.  (Dkt. No. 22 at 4).  After receiving a right-to-sue letter in September 2022, (*id.* at 5), Bee filed suit in December 2022, (Dkt. No. 1), and later amended her Complaint in September 2023, (Dkt. No. 22).  Bee alleges claims under the Equal Pay Act ("EPA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for race and sex discrimination, hostile work environment, and retaliation, the Fair Labor Standards Act ("FLSA"), and the Age Discrimination in Employment Act ("ADEA").  (Dkt. No. 22).

---

[1]    Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020).  The Court has not weighed evidence or made credibility findings. *Id.*

DFPS moved for summary judgment.  (Dkt. No. 28).  After Bee failed to respond, the Court ordered her to file a response, (*see* Dkt. Min. Entry, Feb. 5, 2025), but she never did.  DFPS also filed an advisory noting the lack of response.  (Dkt. No. 29).

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it could affect the suit's outcome under governing law.  *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).  And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

When, as here, the nonmovant fails to respond to the motion for summary judgment, the movant is not entitled to summary judgment solely because the nonmovant does not respond. *Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988). Still, "[t]he failure to respond to a summary judgment motion leaves the movant's facts undisputed." *Flowers v. Deutsche Bank Nat'l Tr. Co.*, 614 F.App'x 214, 215 (5th Cir. 2015) (per curiam) (citing *Eversley*, 843 F.2d at 174). "The court need only decide whether those

undisputed facts are material and entitle the movant to judgment as a matter of law." *Id.* (citing *Eversley*, 843 F.2d at 174). Further, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphases in original).

## III.   DISCUSSION

Bee alleges claims under the EPA, Title VII, the FLSA, the ADEA, and 42 U.S.C. § 1981a. The Court addresses each claim in turn.

### A.   EQUAL PAY ACT CLAIM

Under the EPA, Bee "must show that 'she performed work in a position requiring equal skill, effort and responsibility under similar working conditions,' and that she 'was paid less than members of the opposite sex.'" *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 466 (5th Cir. 2021) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 722 (5th Cir. 1986)); 29 U.S.C. § 206(d)(1). To meet this burden, Bee "need only prove that the 'skill, effort and responsibility' required in the performance of the jobs is 'substantially equal.'" *Jones*, 793 F.2d at 723 (quoting *Pearce v. Wichita Cnty.*, 590 F.2d 128, 133 (5th Cir. 1979)).

If Bee makes that showing, the burden shifts to DFPS to "prove by a preponderance of the evidence that the wage differential is justified under one of the four affirmative defenses set forth in the Equal Pay Act," which include: "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor than sex." *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001) (quoting *Kovacevich v. Kent State Univ.*, 224

F.3d 806, 826 (6th Cir. 2000)).  The burden does not shift back to Bee once DFPS puts forth a legitimate, non-discriminatory reason for the pay disparity.  *Lindsley*, 984 F.3d at 467 ("Under Title VII and the Texas Labor Code (but not under the Equal Pay Act), if the employer provides such a reason, the burden shifts back to the plaintiff to establish that the employer's stated reason is pretextual.").

Bee alleges that she is paid less than her male coworker—Will Watson—for work requiring equal skill, effort, and responsibility.  (Dkt. No. 22 at 3); (*see also* Dkt. No. 28-13 at 34).  Will Watson was the only male Legal Assistant II in Bee's department.  (Dkt. No. 28-13 at 34).  While Bee and Watson share the same job title, "[t]he test relates to the job content rather than to the job title or description."  *EEOC v. Hernando Bank, Inc.*, 724 F.2d 1188, 1196 (5th Cir. 1984).  When she filed her EEOC charge, Bee oversaw three counties (and assisted in another as needed) with 41 cases.  (Dkt. No. 28-12 at 26).  She was the only legal assistant assigned exclusively to county work rather than a mix of responsibilities.  (Dkt. No. 28-7 at 5).  By contrast, Watson oversaw two counties with 68 cases.  (Dkt. No. 28-12 at 26).  Watson was also in charge of coding HotDocs, (Dkt. No. 28-7 at 3), which is "a document preparation program akin to Dorsaneo's practice guides allowing legal staff to pick and choose provisions to be included in pleadings, motions and responses," (*id.* at 5).  That task called for both knowledge of the agency's litigation practice in child-protective cases and information-technology expertise in coding.  (*Id.* at 5).

DFPS has submitted competent summary-judgment evidence showing that Bee handled fewer cases, lacked Watson's technical responsibilities in HotDocs, and did not

perform work requiring equal skill, effort, and responsibility.  Bee did not respond.  *See Ellison v. Hudnall*, No. 4:21-CV-01806, 2023 WL 4188564, at *2 (S.D. Tex. June 26, 2023) (explaining that when a party fails to respond to a summary-judgment motion, the "court may accept the movant's evidence as undisputed and may enter judgment in the movant's favor if the summary judgment evidence established a prima facie showing of the movant's entitlement to judgment").  The Court therefore finds that DFPS is entitled to summary judgment on Bee's EPA claim on this basis.

Even if Bee had shown she and Watson were similarly skilled, DFPS submitted evidence that the wage differential was justified by seniority, merit, and factors other than sex.  Watson has approximately five more years with DFPS than Bee.  (Dkt. No. 28-3 at 4, 6); *see also* 28 U.S.C. § 206(d)(1) (discussing seniority system).  Watson and Bee also received the same wage increases except for on two occasions when Watson received merit-based wage increases.  (*Compare* Dkt. No. 28-3 at 4, *with* Dkt. No. 28-3 at 6); *see also* 28 U.S.C. § 206(d)(1) (discussing merit system).  DFPS has shown—and Bee has not refuted—that the wage disparity between Bee and Watson is attributable to seniority and merit, which are allowed under the EPA.  DFPS has shown that it is entitled to judgment as a matter of law on Bee's EPA claim.

7

### B.    TITLE VII WAGE-DISPARITY CLAIMS

Bee also alleges that she was paid less because of her sex and race.[2]    Under Title VII, an employer may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."    42 U.S.C. § 2000e-2(a)(1). Because Bee relies on circumstantial evidence, her claims are governed by the *McDonnell Douglas* burden-shifting framework.    *Lazarou v. Miss. State Univ.*, 549 F.App'x 275, 279 (5th Cir. 2013) (per curiam).

> Under that framework, "the plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its adverse decision; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic."

*Id.* at 279 (cleaned up) (quoting *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411–12 (5th Cir. 2007)).    Additionally, a Title VII plaintiff "must exhaust administrative remedies by [timely] filing a charge with the EEOC" before filing suit. *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021).

---

[2]    It is unclear whether Bee also alleges that she was paid less due to her age.  (Dkt. No. 22 at 4).  Age is not a protected class under Title VII but is under the ADEA.  *See* 29 U.S.C. § 623. Therefore, the Court addresses Bee's claim that she was compensated less due to her age under the framework of the ADEA.  *See infra* III(F).

### 1.     Sex Discrimination

"To satisfy exhaustion, a claim generally must arise out of the plaintiff's EEOC charge." *Id.* The scope of a Title VII complaint is limited "to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). Bee's EEOC charge never mentions sex; instead, it only addresses race discrimination, age discrimination, and retaliation. (*See* Dkt. No. 28-12 at 4 (checking boxes for race, retaliation, and age but not sex)). Bee has not otherwise submitted any evidence to show that she has exhausted administrative remedies for a sex-discrimination claim. Accordingly, DFPS is entitled to judgment as a matter of law on Bee's Title VII sex-discrimination claim.

### 2.     Race Discrimination

Bee alleges that she is paid less than her Caucasian coworkers—Watson and Audra Bethke—for work requiring substantially the same responsibility.[3] "To establish a *prima facie* case of discrimination respecting compensation [Bee] must prove (1) that she is a member of a protected class, and (2) that she is paid less than a nonmember for work requiring substantially the same responsibility." *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984).

---

[3]     It is unclear whether Bee also alleges racial discrimination in violation of 42 U.S.C. § 1981. (*See* Dkt. No. 22 at 6, 7). The same standard applies under both Title VII and Section 1981. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012). To the extent Bee asserts a claim under Section 1981, the Court holds that it fails for the same reasons her Title VII race-discrimination claim fails.

As explained above, Watson and Bee do not perform substantially similar work. *See supra* III(A). Nor does Bee perform substantially similar work to Bethke. Bethke managed three counties with a total of 45 cases. (Dkt. No. 28-7 at 3). She was also responsible for "organizing, labeling and shipping the records for [the region]'s legal department in compliance with the agency's records retention policies." (*Id.*). In other words, Bethke has more cases and handles additional responsibilities that Bee does not. The Court finds that DFPS is entitled to summary judgment on Bee's Title VII race-discrimination claim on this basis.

Even if Bee had shown that she and Watson or Bethke were similarly skilled, her claim nevertheless fails at the next step in the analysis. DFPS has offered legitimate, non-discriminatory reasons for paying Watson more than Bee. *See supra* III(A). It also has legitimate, non-discriminatory reasons for paying Bethke more than Bee. Bethke received merit-based raises in 2013, 2015, and 2024. (Dkt. No. 28-3 at 1). These were awarded due to the amount and quality of her work. (*See* Dkt. No. 28-10); (Dkt. No. 28-11 at 13–14). Bethke also outperformed Bee in 2023 performance evaluations. (*Compare* Dkt. No. 28-6 at 24–27, *with* Dkt. No. 28-2 at 31–34). DFPS established non-discriminatory reasons for paying Bee less than Watson and Bethke, and Bee did not offer any evidence that either DFPS's reasons were pretextual or that her race was a motivating factor for her lower wage. *See Lazarou*, 549 F.App'x at 279.

For these reasons, DFPS is entitled to judgment as a matter of law on Bee's Title VII race-discrimination claim.

## C. TITLE VII HOSTILE-WORK-ENVIRONMENT CLAIM

Bee alleges that she was subjected to a hostile work environment due to her race and sex.[4]  To allege a hostile-work-environment claim, Bee must prove that "(1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on [that protected class]; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and did not take prompt remedial action." *Reine v. Honeywell Int'l*, 362 F.App'x 395, 397 (5th Cir. 2010).  As with the Title VII wage-disparity claims, Bee is required to exhaust her administrative remedies before suing for a hostile work environment.  *Stanley v. Univ. of Tex. Med. Branch*, 425 F.Supp.2d 816, 822–23 (S.D. Tex. 2003).

Bee did not raise a hostile-work-environment claim arising from race or sex discrimination in her EEOC charge.  (*See generally* Dkt. No. 28-12).  Instead, she alleged retaliation, pay disparity, and age-based workload differences.  (*Id.* at 4–5).  Because a Title VII complaint is limited "to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," *Sanchez*, 431 F.2d at 466, Bee did not appropriately exhaust her administrative remedies to pursue the race- and sex-based hostile-work-environment claims.  Accordingly, the Court grants

---

[4]     Bee also alleges that she suffered a hostile work environment due to her age under Title VII.  Age is not a protected class under Title VII, but the Fifth Circuit has held that a plaintiff can bring a hostile-work-environment claim based on age discrimination under the ADEA. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011).  Therefore, the Court construes Bee's hostile-work-environment claim as arising under the ADEA instead of Title VII.  *See infra* III(F).

summary judgment on Bee's Title VII hostile-work-environment claims due to her race and sex.

### D.    TITLE VII RETALIATION CLAIM

Bee alleges that DFPS retaliated against her in violation of Title VII after she internally complained about Adams discriminating against her.  (Dkt. No. 22 at 2, 4). "Title VII precludes employers from retaliating against employees because they 'opposed, complained of, or sought remedies for, unlawful workplace discrimination.'" *Sotonwa v. Collins*, No. 24-11043, 2025 WL 2222730, at *6 (5th Cir. Aug. 5, 2025) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342, 133 S.Ct. 2517, 2522, 186 L.Ed.2d 503 (2013)).  Bee's claims are once again governed by the *McDonnell Douglas* burden-shifting framework.  *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023); *see supra* III(B).  To establish a prima facie case of retaliation, Bee must show that she engaged in a protected activity, that she suffered an adverse-employment action, and that there was a causal connection between the protected activity and the adverse-employment action. *Hudson*, 58 F.4th at 231.  "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."  *Ackel v. Nat'l Comms. Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Admin. of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).

Bee cannot establish any of the elements of a prima facie case of retaliation.  First, she has not shown that she engaged in a protected activity.  She has not described the substance of her internal complaint or shown that it concerned conduct prohibited by

Title VII.  (*See generally* Dkt. No. 22).  Second, Bee also failed to show that she suffered an adverse-employment action.  The poor performance evaluation Bee cites and "harassing emails" when Bee was unreachable during work hours, without more, are not adverse-employment actions.  (Dkt. No. 28-13 at 48); *Jackson v. Honeywell Intern., Inc.*, 601 F.App'x 280, 286 (5th Cir. 2015) (noting unfavorable performance reviews are not adverse-employment actions "where colorable grounds exist for disciplinary action" (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006))); *see also Lemonia v. Westlake Mgmt. Servs.*, No. 22-30630, 2023 WL 6878915, at *7 (5th Cir. Oct. 18, 2023) (per curiam) (explaining a performance-improvement plan constitutes an adverse-employment action only if it "affect[s] job title, grade, hours, salary, or benefits or causes a diminution in prestige or change in standing among coworkers" (quoting *Welsh v. Ford Bend Indep. Sch. Dist.*, 941 F.3d 818, 827 (5th Cir. 2019) (cleaned up)).  There is simply no evidence to show that DFPS giving Bee a poor performance evaluation and sending allegedly harassing emails affected her compensation, duties, or employment status; therefore, they are not adverse-employment actions.  *See Welsh*, 941 F.3d at 827.  Third, Bee failed to establish a causal link between the purportedly protected activity and the allegedly adverse-employment actions.  The Court therefore finds that DFPS is entitled to summary judgment on Bee's Title VII retaliation claim.

Even if Bee had shown a prima facie case of retaliation, her claim would still fail. DFPS offered legitimate, non-retaliatory reasons for her performance evaluation, including poor communication during a county-workload transfer, unprofessional

13

interactions with an attorney, and a lack of availability to assist coworkers.  (Dkt. No. 28-2 at 25).  Bee did not respond and therefore did not provide any evidence to contradict DFPS's evidence.  *See Ellison*, 2023 WL 4188564, at *2.  Accordingly, DFPS is entitled to judgment as a matter of law on Bee's Title VII retaliation claim.

### E.    FAIR LABOR STANDARDS ACT CLAIM

Bee alleges that DFPS failed to pay her overtime under the FLSA.  (Dkt. No. 22 at 3, 5).  DFPS argues that it retains sovereign immunity from Bee's FLSA claim.  (Dkt. No. 28 at 28).  The Court agrees with DFPS.

State sovereign immunity "is commonly distilled to the proposition that individuals may not sue a state — either in its own courts, courts of other states, or federal courts — without the state's consent."  *Russell v. Jones*, 49 F.4th 507, 512 (5th Cir. 2022).  The protection extends to state agencies.  *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 3 (Tex. 2000).  An individual may only sue a state agency when Congress clearly abrogates state sovereign immunity or when the state consents to suit.  *Russel*, 49 F.4th at 512 (quoting *College Sav. Bank. v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 119 S.Ct. 2219, 2223, 144 L.Ed.2d 605 (1999)).

Here, DFPS is a state agency.  (Dkt. No. 28 at 1).  Congress has not clearly abrogated state sovereign immunity for FLSA claims.  *Parker v. Prairie View A&M Univ.*, 145 F.Supp.3d 702, 705 (S.D. Tex. 2015) ("The FLSA does not abrogate state sovereign immunity.") (citing *Alden v. Maine*, 527 U.S. 706, 712, 119 S.Ct. 2240, 2246, 144, L.Ed.2d 636 (1999)).  Nor has Bee established that Texas consented to suit.  *See Parker*, 145 F.Supp.3d at 704 ("There is no evidence that any Defendant waived its sovereign

immunity.  When there is a challenge to the court's subject-matter jurisdiction, the party

asserting jurisdiction bears the burden of establishing the jurisdiction exists.") (citing first

*Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014); and then

citing *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014)).  DFPS is entitled to judgment

as a matter of law on Bee's FLSA claim.

### F.    AGE DISCRIMINATION IN EMPLOYMENT ACT CLAIMS

The Court construes Bee's Complaint to assert both hostile-work-environment and

wage-disparity claims under the ADEA.  *See supra* notes 2, 4.  Both claims are barred by

sovereign immunity.

Congress has not clearly abrogated state sovereign immunity for ADEA claims.

*See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91, 120 S.Ct. 631, 650, 145 L.Ed.2d 522 (2000)

("[I]n the ADEA, Congress did not validly abrogate the States' sovereign immunity to

suits by private individuals."); *see also Chhim v. Univ. of Tex.*, 836 F.3d 467, 469–70 (5th Cir.

2016) (affirming trial court's dismissal of ADEA claim because Congress did not waive

sovereign immunity from ADEA claims).  Nor has Bee met her burden to establish that

Texas consented to suit.  *See Parker*, 145 F.Supp.3d at 704 (citing first *Alabama-Coushatta

Tribe*, 757 F.3d at 487; and then citing *Gilbert*, 751 F.3d at 307).  The Court therefore grants

summary judgment on Bee's ADEA claims on that basis.

Bee's hostile-work-environment claim fails for an independent reason: she failed

to exhaust her administrative remedies before suing under the ADEA for a hostile work

environment.  *See Walton-Lentz v. Innophos, Inc.*, 476 F.App'x 566, 569 (5th Cir. 2012) (per

curiam).  To allege a hostile-work-environment claim under the ADEA, Bee must prove

15

that "(1) [she] was over the age of 40; (2) [she] was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer." *Dediol*, 655 F.3d at 441.

Bee's EEOC charge does not allege a hostile work environment. (*See generally* Dkt. No. 28-12). Instead, Bee claimed that she was being retaliated against for filing an internal complaint, she was being paid less, and that she was being discriminated against by receiving more duties than her younger coworker. (*Id.* at 4–5). "A hostile-work-environment claim could not 'reasonably be expected to grow out of [plaintiff's] EEOC charges." *Walton-Lentz*, 476 F.App'x at 572. The Court therefore grants summary judgment on Bee's ADEA hostile-work-environment claim.

### G.   42 U.S.C. § 1981a CLAIM

Bee also seeks compensatory damages for the "pain and suffering" caused by DFPS's discrimination under 42 U.SC. § 1981a. (Dkt. No. 22 at 7). Section 1981a provides a "prevailing plaintiff in an intentional-employment-discrimination suit (whether brought under Title VII, the ADA or the Rehabilitation Act) with the ability to recover compensatory and punitive damages." *Williamson v. American Nat. Ins. Co.*, 695 F.Supp.2d 431, 443 (S.D. Tex. 2010). It does not create a new substantive right or independent cause of action. *Id.* And "'it applies only if the plaintiff otherwise establishes intentional discrimination on the part of the employer under another substantive act;' there must be a claim under another substantive act for it to apply." *Id.* (quoting *Yowman v. Jefferson Cnty. Comm. Super. & Corr. Dept.*, 370 F.Supp.2d 568, 585–86 (E.D. Tex. 2005)). Because

16

Bee has not otherwise established a viable claim of intentional discrimination, the Court grants summary judgment in DFPS's favor on Bee's Section 1981a claim.

## IV.   CONCLUSION

Needless to say, it is difficult to survive a summary-judgment motion when one fails to respond to it.   That is particularly true when, as here, the Court ordered a response.   Considering the foregoing analysis, the Court **GRANTS** DFPS's Motion for Summary Judgment.   (Dkt. No. 28).   Bee's claims against DFPS are therefore **DISMISSED with prejudice**.

It is SO ORDERED.

Signed on March 30, 2026.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**